RECEIVED
BY MAIL

APR 18 2014

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| KURIAN BENJAMIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14- CV - 00810 |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) | |
| AND WELLS FARGO HOME MORTGAGE, A | ) | |
| DIVISION OF WELLS FARGO, N. A. | ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC. AND WELLS FARGO BANK N.A.'S MOTION TO DISMISS

COMES NOW the Plaintiff, Kurian Benjamin, and for his Memorandum in Opposition to Defendant's Motion to Dismiss, he states as follows:

### OVERVIEW

1.     Wells Fargo Bank, N.A. (hereinafter "Defendant Wells Fargo") is a servicer of mortgage loans that acquired the servicing of Plaintiff's loan. The loan was paid in full on December 10th of 2010, to Bank of America who was the mortgage holder at that time but Wells Fargo continued to report the loan as not paid and reported negatively to Defendant Experian Information Solutions, Inc. (hereinafter "Defendant Experian").

2.     Plaintiff has brought this action under two counts – the Fair Credit Reporting Act (FCRA) and the tort of defamation. The FCRA at 15 U.S.C. §1681s-2(b) provides a focused and specific remedy requiring a furnisher of credit information to conduct a reasonable investigation of a consumer's dispute.  In this matter, Defendants make a big deal out of the fact that Plaintiff Benjamin failed to allege (as he must to state a claim under the FCRA) that Defendant Wells Fargo received notice of his dispute from a credit reporting agency. The Defendants seem to believe that their original violation in July 2011 immunizes them from further violations committed after July

1

SCANNED
APR 18 2014
U.S. DISTRICT COURT ST. PAUL

2011. In the eyes of the Defendants, the July 2011 violation forever excuses and relieves them from conducting any further investigations or even reviewing and acting upon the later and even more developed disputes of the recent years. This constrained interpretation of the Defendants is simply not the law for it ignores the actual plain language of the statutory text.

2.      Plaintiff Benjamin will outline in this memorandum the Defendants' position is not supported by the statute, case law or even basic common sense, and accordingly the motion to dismiss should be denied.

## FACTUAL ALLEGATIONS OF THE COMPLAINT

3.      The following material facts of the Complaint pertain to Defendant Wells Fargo's investigation of Plaintiff's dispute submitted via Defendant Experian. The facts of the Complaint relevant to Defendants' motion to dismiss are as follows:

### June 2011 Dispute

4.      In June of 2011, Mr. Benjamin forwarded dispute letters to Defendant Experian. Plaintiff Benjamin's dispute letters explained that the Wells Fargo account was paid in full and that Wells Fargo never completed the foreclosure procedure, and the loan was paid in full as of December 10, 2010. Plaintiff Benjamin supplemented his dispute letters with a copy of the payoff check and the settlement documents from Wells Fargo Attorneys evidencing the payment between Plaintiff Benjamin and the mortgage holder Bank of America. Plaintiff Benjamin requested that Defendant Experian investigate the account and show that it was paid in full on his credit reports and remove record of the Discharge through Bankruptcy of the mortgage.

5.      Upon information and belief, Defendant Experian forwarded the disputes to Wells Fargo for investigation of the account.

6       On or about September, 2011, Defendant Experian reports indicated as foreclosed in October 2010, November 2010, and as foreclosure started in September 2011, and Defendant Wells Fargo

instructed Defendant Experian to continue reporting the account as of June 24, 2013, indicating Bankruptcy Chapter 7. Defendant Experian reported that "credit grantor reclaimed collateral in March of 2013 and November of 2010. (Credit code M8, Information reported in paper form by credit grantor and manually entered by Defendant Experian as repossession) Credit grantor reclaimed collateral to settle defaulted mortgage foreclosure proceedings started. Account information disputed by consumer last paid September 20, 2010". Report dated October 17, 2013, Wells Fargo is reporting to Defendant Experian as account included in Bankruptcy and this information was updated on July 22, 2013 by Defendant Wells Fargo. Defendant Wells Fargo reporting as Bankruptcy Chapter 7 to Defendant Experian on March 1, 2014. Defendant Experian report dated March 28, 2014 indicating Bankruptcy Chapter 7- reported by Defendant Wells Fargo's subsidiary Wells Fargo Home Mortgage.

### July 2011 Dispute

7.      On or about July, 2011, Plaintiff Benjamin forwarded another dispute letter to Defendant Experian expressing his dissatisfaction with Defendant Experian's investigation results and demanding Defendant Experian perform a thorough investigation of the account.

8.      On or about September 11, 2011, Plaintiff Benjamin received an updated credit report from Defendant Experian. Defendant Wells Fargo had instructed Defendant Experian to remove the "Bankruptcy" remark but to continue reporting the account as of September 27, 2011, indicating as foreclosed in October 2010, November 2010 and as foreclosure started in September 2011.

### December 2012 Dispute

9.      On or about December, 2012, Plaintiff Benjamin forwarded dispute letters to Defendant Experian. In support of his dispute, Plaintiff Benjamin attached a copy of the check evidencing the payoff documents to credit bureaus including payoff check dated December 10, 2010, by certified

mail. Plaintiff Benjamin also pointed out that Defendant Wells Fargo is reporting the account as not paid in full in December 2012.

10.     Upon information and belief, the Defendant Experian forwarded the dispute to Defendant Wells Fargo for investigation of the account.

11.     After Defendant Wells Fargo investigated the December, 2012 disputes, Defendant Wells Fargo instructed:

> A.     Defendant Experian to continue reporting the account as Foreclosed in 2011;
>
> B.     Transunion to delete the account;
>
> C.     Equifax to continue to report the account as Included in Bankruptcy;

## February 2013 Plaintiff Benjamin hired a Law Firm to Dispute

12.     Plaintiff Benjamin hired Law Firm Henley and Henley, PC to dispute the credit report. On or about March 2013, Defendant Wells Fargo informed Chris Ebert at Henley and Henley that Defendant Wells Fargo sent a request to Defendant Experian to report Plaintiff's mortgage as paid on December 2010, and with no comment relating to any foreclosure.

13.     Defendant Wells Fargo failed to do what it promised to Mr. Ebert and after further discussion, Defendant Wells Fargo assigned this matter to Wells Fargo Research and Compliance Department and assigned an attorney in California to resolve the matter.

14.     This attempt failed.

## May 2013 Dispute

15.     Plaintiff Benjamin disputed the Wells Fargo account again with Defendant Experian in May of 2013. Defendant Experian again forwarded the dispute to Defendant Wells Fargo and Defendant Wells Fargo responded by instructing Defendant Experian to continue reporting the account as a Foreclosure Proceeding Started as in March 2013.

16.     From the plain facts of the Complaint the Court knows:

A.      The mortgage loan that was serviced by Defendant Wells Fargo was paid in full;

B.      Thereafter Defendant Wells Fargo continued to report the mortgage in a negative

manner;

C.      Plaintiff Benjamin first learned about Defendant Wells Fargo's erroneous reporting

more than two years before the Complaint was filed;

D.      Plaintiff Benjamin made multiple disputes to Defendant Experian; and

E.      Some of those disputes were made within two years preceding the filing of the

Complaint.

## ARGUMENTS

A.      **BECAUSE THE PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM UNDER THE FCRA WITHIN TWO YEARS OF FILING THE COMPLAINT, DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED**

1.      **Plaintiff has alleged the Defendant violated the FCRA Section 1681s-2(b) on July 26, 2011, and in September 2011, and in December 2012, and in February 2013.**

17.     Defendant Wells Fargo's and Defendant Experian's Motion to Dismiss is an attempt to avoid

and circumvent the substance and legal basis of Plaintiff Benjamin's actual claim.

18.     Either Defendant Wells Fargo and Defendant Experian have not bothered to read the statute

or is being disingenuous with the Court.

19.     The FCRA violation in this matter is not alleged to be the publication of inaccurate

information; rather, it is the failure to **investigate** specific disputes made on specific dates.

20.     In Count One of the Complaint, Plaintiff Benjamin alleges Defendant Wells Fargo violated

the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct a reasonable

investigation with respect to the Wells Fargo mortgage account thereby causing a "failure to correct

the misinformation contained in the credit report Defendant prepared for Plaintiff." Complaint ¶13,

and acted negligently or with a reckless disregard for Mr. Benjamin's rights under the FCRA at

§1681s-2(b)(1)(D) & (E) [failed] to delete the account [or] modify the account to its correct status as paid in full. Both of those claims arise under FCRA section 15 U.S.C. §1681s-2(b).

21.   Courts have previously detailed the responsibilities of a furnisher with respect to §1681s-2(b). See Saunders **v. Branch Banking**, 526 F.3d 142 (4th Cir. 2007), where the Court explained:

> "At issue in this appeal are the additional duties a furnisher incurs under §1681s-2(b) if a consumer disputes the accuracy of information that the furnisher reports. If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. §1681i(a)(2). Upon receipt of this notice, a furnisher must: (A) Conduct an investigation with respect to the disputed information ... §1681s-2(b)(1)."

22.   Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "incomplete or inaccurate." §1681s-2(b)(1)(D).

Id. at 148.

23.   The Defendants' statute of limitations defense ignores the substance and elements of a §1681s-2(b) claim.

24.   It is not the publication of an inaccurate account that triggers the statute to run or establishes a cause of action. To the contrary, there is not even a private cause of action available for a creditor's furnishing of inaccurate information. *See* §1681s-2(a),(c)&(d) (Subsection (a) imposes duties upon furnishers of credit information to provide consumer reporting agencies with accurate information. Subsections (c) and (d), limit the remedies available for violations of subsection (a). In particular, subsection (c) eliminates the availability of direct remedies to consumers by making Sections 1681n and 1681o inapplicable to violations of subsection (a)).

25.   In their Motion to Dismiss, the Defendants point out that the Plaintiff first disputed the Wells Fargo mortgage account in July of 2011 and therefore was time barred after July 2013. Def. Memo. pp. 5-6. Defendants are correct to the extent that Plaintiff's claim arising from the July 2011 dispute

is time barred. If the July 2011 dispute was Plaintiff Benjamin's only dispute then his entire Complaint would be time barred.

26.     But in addition to the July 2011 dispute Plaintiff Benjamin made at least two disputes with Defendant Experian within the two years preceding the filing of the Complaint that would be governed by §1681s-2(b).

27.     Plaintiff Benjamin's Complaint alleges that on July 26, 2011 and May 2013, Plaintiff Benjamin made a dispute and request for investigation of the subject account to Defendant Experian. Complaint ¶¶7,9,12 & 15.

28.     Plaintiff Benjamin further alleges that upon receipt of such disputes, the Defendants failed to perform the functions and obligations imposed at §1681s-2(b). Complaint ¶¶19, 22, 23, & 24.

29.     There is thus no dispute that Plaintiff Benjamin has alleged a violation of 15 U.S.C. §1681s-2(b) with the two year statute of limitation period of filing the Complaint.

      2.     **Each violation of the FCRA is independent of any other violation.**

30.     Although Plaintiff Benjamin has adequately pled each element of §1681s-2(b) necessary to establish a FCRA violation in July and October of 2011, and February 2013, Defendant Wells Fargo nonetheless argues that earlier disputes made by Plaintiff Benjamin outside the two year limitations window should bar Plaintiff Benjamin's claims based entirely upon subsequent violations of the statute. Such a conclusion is not supported either by the plain text of the FCRA or by its interpreting case law.

31.     Section §1681p governs the time limitations on bringing a FCRA claim can and reads:

> "An action to enforce any liability created under this title [15 USCS §§ 1681 et seq.] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of-- (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or § 1681p(1)(emphasis added).

32.    As Defendant points out, the FCRA's period of limitations relevant to this case is

two years from discovery. 15 U.S.C. § 1681p(1).

33.    However, this two year period runs from "the violation that is the basis for such

liability[.]" Id. (Emphasis added).

34.    Defendant Wells Fargo and Defendant Experian's argument thus makes no sense.

35.    Defendant Wells Fargo and Defendant Experian seem to contend that a party may

accumulate only a single FCRA violation - once that has occurred, it is forever immune

from liability for subsequent violations.

36.    But the fact that the Defendant Wells Fargo and Defendant Experian received

earlier disputes from Plaintiff Benjamin, which they also ignored or improperly

investigated, does not excuse their later similar violations.

37.    To the contrary, in the best FCRA cases the consumer will have provided the furnisher

multiple opportunities to correct its inaccurate reporting, with each subsequent dispute providing

greater and more detailed information for the furnisher to consider and investigate. In fact, it is likely

that a consumer that makes only a single dispute would present a case much less likely to meet the

"willfulness" threshold required for recovery of punitive damages. 15 U.S.C. §1681n.

38.    See e.g. **Dalton v. Capital Associated Industries, Inc.** 257 F.3d 409, 418 (4th Cir.

2001)(Defendant corrected inaccuracy one day after dispute. Summary judgment for negligence

denied, but for willfulness granted).

39.    Surely the system should not work as to promote that a consumer rush into filing suit after a

single dispute. Congress designed the FCRA to support and sanction the dispute process as a means

to obtain relief without having to file a lawsuit. Defendant's novel interpretation would run in

contradiction to the intent of the FCRA.

40.     As offered above, the Defendants' argument confuses the statutory text at §1681p in two

ways.

41.     In order for Defendants' interpretation to have merit, one must replace the word "inaccuracy"

for the statute's word "violation." Thus, the Defendants argue that what Congress really meant was

not "2 years after the date of discovery by the plaintiff of the **violation** that is the basis for such

liability", but instead "2 years after the date of discovery by the plaintiff of the **inaccuracy** that is the

basis for such liability." (emphasis added). As the Fourth Circuit has cautioned previously in its

FCRA interpretation:

> "In interpreting a statute, we must first "determine whether the language at issue
> has a plain and unambiguous meaning with regard to the particular dispute in the
> case." **Robinson v. Shell Oil Co.**, 519 U.S. 337, 340 (1997). "Our inquiry must
> cease if the statutory language is unambiguous and the statutory scheme is
> coherent and consistent." Id. (internal quotation marks omitted). "The plainness or
> ambiguity of statutory language is determined by reference to the language itself,
> the specific context in which that language is used, and the broader context of the
> statute as a whole." Id. at 341." **Johnson v. MBNA America Bank, N.A.**, 357
> F.3d 426, 430 (4th Cir. 2007).

42.     Each dispute and failure to comply with the FCRA's investigation requirement will itself be

the basis for a separate FCRA violation.

43.     The Defendants' position to the contrary is not only inconsistent with the statutory text, but

as well with nearly every court decision applying such text. One court explained the underlying

reasoning for such decisions:

> "The Act states that "[a]fter receiving notice pursuant to section 611(a)(2) of *a*
> *dispute* with regard to the completeness or accuracy of *any information* provided
> by a person to a consumer reporting agency, the person *shall* (A) conduct an
> investigation with respect to the disputed information ..." 15 U.S.C. § 1681s-2
> ([original] emphasis). The statute's construction creates a violation every time a
> consumer submits a dispute to a credit reporting agency and that agency or the
> relevant lender does not respond to the complaint as directed by the statute. The
> fact that the account or transactions questioned in the instant dispute may have also
> been the subject of a previous dispute does not mitigate the obligations of the bank
> or credit reporting agency to take the actions outlined in § 1681s-2(b)(1)(A)-(D).
> FCRA therefore imposes a burden on banks to respond appropriately to each and
> every consumer dispute that is admittedly onerous, but that burden appears

9

consistent with the congressional intent underlying the Act.... **Broccuto v. Experian**, , 2008 WL 1969222 * 4 (E.D. Va.). *See also e.g.* **Pletz v. MBNA America, N.A.**, , 2007 WL 518756, *3 (S.D.Ill 2007) (Likewise, when different forms of unlawful conduct occur over the course of several years, and the putative plaintiff thereafter files suit, it is possible that some statutory bases of her recovery may be time-barred while she may yet proceed with other claims arising from the defendant's more recent violations. A contrary ruling would allow an actor to commit minor infractions in violation of federal law, wait for the applicable statute of limitations to pass, and thereafter escalate both the breadth and depth of its illegal conduct with impunity, violating new provisions within the statute and ramping up the intensity of its earlier violations.); **Larson v. Ford Credit**, 2007 WL 1875989 (D. Minn. 2007) ("each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations"); **Thomas v. U.S. Bank, N.A.**, 2007 WL 764312, *5 (D. Or. 2007)("The bank's first argument on this point is that the Thomases' claim is untimely. Section 1681p of the FCRA requires the plaintiff to bring an action to enforce "any liability created under this subchapter" within "two years after the date of discovery by the plaintiff of the violation that is the basis for such liability." The bank argues that because the Thomases knew it was erroneously reporting the Visa account as involved in a Chapter 7 bankruptcy as far back as March 2002, the statute of limitations for raising this issue expired before the bank even received the ACDVs at issue here. This is in error. The Thomases' suit is necessarily based on the bank's investigation of the ACDVs, and not simply on its reporting of false information. **Nelson**, 282 F.3d at 1059-60."); **Campbell v. Chase Manhattan Bank**, 2005 WL 1514221 (D. N.J. 2005); **Lawrence v. Transunion LLC**, 296 F.Supp.2d 582, 587 (E.D. Pa. 2003); and **Jaramillo v. Experian Information Solutions, Inc.**, 155 F.Supp.2d 356, 359 (E. D. Pa. 2001) (In a §1681s-2(b) case, each FCRA violation "is a separate and distinct tort to which a separate statute of limitations applies. The failure of the consumer to mitigate his damages by filing suit when he is first injured, thus permitting a more widespread circulation of the credit information, should have a "bearing [only] on the [calculation of] damages." Citing **Hyde v. Hibernia**, 861 F.2d 446 (5th Cir.1988).)

3.  **Liability arises under §1681s-2(b) when a furnisher fails to perform a reasonable investigation.**

44.  Once again either the Defendants are being disingenuous when they proffer that a FCRA claim only arises if a furnisher does not conduct an investigation or the Defendant is not knowledgeable of the case law governing this Circuit.

45.  I tend to believe it is the former because the Defendants and their counsel are very experienced in this area of law. It is well-settled that a furnisher is liable under the §1681s-2(b) if the furnisher does not perform a *reasonable* investigation of a consumer's dispute. *See* **Johnsosn**, 357

F.3d at 431 (We therefore hold that §1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a *reasonable investigation* of their records to determine whether the disputed information can be verified.) (emphasis added); and *see also* **Thomas v. Early Warning Services**, LLC, 2011 WL 1298303 (D. Md.) ("A furnisher can violate this subsection [§1681s-2(b)(1)] by failing to **properly investigate** disputed information or failing to undertake any investigation whatsoever.") (emphasis added). Defendants' citation of a U.S. District Court opinion involving a *pro se* litigant that is inconsistent with established law is disturbing to say the least.

46.      Here, Plaintiff Benjamin clearly alleges the Defendants "fail[ed] to conduct a reasonable investigation with respect to the Wells Fargo mortgage account", which meets the pleading standard set by the Fourth Circuit in **Johnson**. Complaint ¶26. Accordingly Defendants' argument that because "Plaintiff's Complaint does not allege (nor could it) that Wells Fargo failed to investigate his disputes ...the Plaintiff has failed to state a claim under §1681s-2(b) for lack of investigation", Def's Memo at 5, is without merit and must be rejected.

### 4.    Because Defendant's Motion Offers No Argument Against Plaintiff's §1681s-2(b)(1)(D)&(E) It Must Be Denied

47.      As set forth in **Sanders** the Court clearly states a furnisher is liable for failing to correct information previously reported to a credit reporting agency. See **Sanders**, 526 F.3d at 148 ("Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is *incomplete or inaccurate*.' §1681s-2(b)(1)(D)") (original emphasis).

48.      Plaintiff Benjamin alleges that Defendant Wells Fargo failed to determine the Wells Fargo account was incomplete or inaccurate after receiving Plaintiff's dispute from the credit reporting agencies. Complaint ¶¶19, 24, 30, 31 & 33.

49.      Defendants do not assert Plaintiff's §1681s-2(b)(1)(C)&(D) claims are defective but generally asks for the entire Complaint to be dismissed.

50.     The gravamen of Defendants' Motion to Dismiss is that Plaintiff's claims are time barred. The law clearly requires a furnisher to correct or complete its previous "incomplete or inaccurate" reporting to a credit reporting agency. Id. Plaintiff has alleged that Defendants did not correct or complete their previous reporting of the mortgage account after Plaintiff disputed the mortgage account in July and October of 2011 via the credit reporting agencies.

## CONCLUSION

51.     Pursuant to Fed. R. Civ. P. 12(b)(6), this Court should enter an Order denying dismissal in favor of the Plaintiff, Kurian Benjamin, and against the Defendants, Experian Information Solutions, Inc., and Wells Fargo Home Mortgage, A division of Wells Fargo N. A.

52.     If the Court were inclined to grant Defendant's dismissal, Plaintiff asks leave to amend the Complaint.

Date: April 16, 2014

_____

Kurian Benjamin
Plaintiff and Attorney *pro se*
10092 Powers Lake Trail
Woodbury, MN 55129
(651) 755-8500
kbenjamin@delivery-service.com