RECEIVED BY MAIL
MAY 15 2014
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| KURIAN BENJAMIN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXPERIAN INFORMATION SOLUTIONS, INC. )<br>AND WELLS FARGO HOME MORTGAGE, A )<br>DIVISION OF WELLS FARGO, N. A. )<br>)<br>Defendants. ) | Case No. 14- CV - 00810 |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STRIKE

**COMES NOW** the Plaintiff and Attorney *pro se* Kurian Benjamin (hereinafter "Plaintiff") and hereby files his Memorandum in Support of his Motion Opposing Defendant Wells Fargo's and Defendant Experian's (hereinafter "Defendants") Motion to Dismiss.

1. Defendants lash out at Plaintiff's claim stating Plaintiff filed a legally insufficient Complaint against, devoting no more than five sentences to the substantive basis for his Fair Credit Reporting Act (FCRA) claim.

2. Based on the limited factual allegations in the Complaint, and because those five sentences only alleged that Plaintiff disputed under the FCRA in 2011, Defendants filed their Motions to Dismiss.

3. On the other hand Defendants credited Plaintiff and Attorney *pro se* Kurian Benjamin with filing an extensive brief opposing Defendants' Motion to Dismiss.

4. Defendants allege that Plaintiff relying almost exclusively on new facts and allegations that were not included in his Complaint.

SCANNED
MAY 16 2014
U.S. DISTRICT COURT ST. PAUL

5. Defendants allege parties are not permitted to use briefs to add to the allegations in the Complaint, and because Plaintiff's Complaint fails to state a claim Defendants, this Court should grant Defendants' Motion to Dismiss.

6. Now, in response to Defendants' Memorandum in support of the motion to dismiss:

## PLAINTIFF'S MOTION TO STRIKE

7. In reply Plaintiff points out the facts that separate violations occurred during the two-year period prior to the filing of his petition. See 15 U.S.C. § 1681p.

8. Plaintiff's Complaint clearly identifies the issues in questions item 1 and 2 of the original Complaint.

9. Even a legal novice knows that a motion to dismiss is not the correct forum to argue the merits of a Plaintiff's allegations for the following reasons.

10. See **Presley v. City of Charlottesville**, 464 F.3d 480, 483 (4th Cir. 2006) ("[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve the contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

11. It is procedurally and substantively inappropriate for a Defendant to assert contrary allegations in a motion to dismiss. See **A.S. Abell Co. v. Chell**, 412 F.2d 712, 715 (4th Cir. 1969) (The court must disregard the contrary allegations of the opposing party).

12. A Defendant cannot use a Motion to Dismiss to argue whether or not the Plaintiff can prove his claims. See **Revene v. Charles County Comm'rs**, 882 F.2d 870, 872 (4th Cir. 1989) (quoting **Scheuer v. Rhodes**, 416 U.S. 232, 236 (1974)) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.")

## DEFENDANTS' COUNSELS DO NOT ACEPT PLAINTIFF'S ALLEGATIONS AS TRUE

13. On April 10, 2014, Plaintiff tried to reach out to the Defendants Counsels to find a settlement of this matter and presented evidence by e-mail on April 10, 2014.

14. On April 11, 2014, Plaintiff e mailed documents to Defendants consisting of evidence of payoff information.

15. Defense Counsels' actions violate 28 U.S.C. §1927, which provides that "[a]ny attorney or other person admitted to conduct cases ... who so multiplies the proceedings in any case unreasonably and troublesome may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

## DEFENDANTS CONTINUE TO IGNORE PLAINTIFF'S FACTS AND EVIDENCE PLEADING THE STATUTE OF LIMITATIONS

16. Plaintiff sent the credit bureaus dispute letters in June 2011, November 2012, March 2013, November 2013, and January 2014.

17. In March of 2013, both Defendants were contacted by Plaintiff's agent, Chris Ebert, Esq. of the Henley and Henley Law Firm for correcting the reporting error.

18. Plaintiff's credit report was initially changed as a result of his first dispute but that the inaccurate erroneous information was re-reported during the limitations period; that new, incorrect information was reenter during the limitations period; See Exhibit: R1a & R1b, R2, R3, R4, R5, R6, R7, R8, R9, R10, R11 and R12.

19. The statute of limitations clock restarted in February 16, 2013, April 11, 2013, June 30, 2013, July 22, 2013 and December 22, 2013 when incorrect information again appeared in Plaintiff's credit reports after having been reported erroneously as a result of my initial dispute.

20. In **Hyde v. Hibernia Nat'l Bank in Jefferson Parish**, 861 F.2d 446, 450 (5th Cir. 1988). In Hyde, the Fifth Circuit concluded in the context of an FCRA case that each new issuance of a credit report to an institution with which the consumer is dealing is a separate and distinct injury to which a separate statute of limitations applies. Id.; See also **Fleischmann v. Care Credit**, 2012 WL 6082893, at *3 (C.D. Cal. Dec. 6, 2012). Other courts have extended **Hyde** in concluding that each

3

failure to conduct a reasonable investigation in response to a dispute is a separate FCRA violation such that, contrary to subsequent dispute letters are sufficient to restart the limitations period.

21. **Young v. LVNV Funding LLC**, 2013 WL 4551722, at *3 (E. D. Mo. Aug. 28, 2013) (following the "majority of courts" and concluding that each re-report of inaccurate information is subject to its own statute of limitations); **Baratto v. Citizens Auto. Fin., Inc.**, 2011 WL 3678676, at *5 (D. Minn. Aug. 1, 2011) (violation occurs every time a consumer submits a dispute to a credit reporting agency or lender and that entity does not respond as directed by the statute); **Broccuto v. Experian Information Solutions, Inc.**, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008): See also **May Brown vs Equifax Inc.; Trans Union LLC; Household Finance Corporation III; HSBC Case No. 13-cv-2373, 2013, District of Kansas**.

22. More over on December 29, 2011, Plaintiff applied for credit from CBNA, on October 16, 2011, a credit card from Bank of America, on October 4, 2011, a Business loan from Wells Fargo Bank TX NA, on July 6, 2012, for an auto loan with Credco, on July 7, 2012 for a car loan from American Honda Finance Corporation, on May 4, 2013, an auto loan from Chase Bank USA, N. A., and on July 7, 2012, an auto loan from Santander Auto, on August 17, 2012, a refinance loan from Hiway Credit Union, on July 7, 2012 an auto loan from Wells Fargo Dealer Service, on July 7, 2012 and auto loan from Capital One Auto Finance, on November 8, 2012, a business equipment loan from Herrera Property Group, on May 7, 2013, a CBNA credit card. And on May 4, 2013, for credit from Chase Bank.

23. All these applications were denied as a result of the inaccurate credit report error caused by the Defendants.

24. Plaintiff suffered injuries during the limitations period as a result of credit denials.

25. Plaintiff's FCRA claims are clearly timely filed.

26. Defendants continue re-reporting of inaccurate information, the reporting of additional inaccurate information and Plaintiff continue to suffer denial of credit based on the alleged re-reporting and inclusion of new, inaccurate information.

27. Defendants' argument that Plaintiff's FCRA claim is outside the Statute of Limitations has no merit.

28. The Plaintiff has alleged that new, separate violations occurred during the two-year period prior to the filing of his petition. See 15 U.S.C. § 1681p.

29. Defendants' Motion to dismiss should be denied.

## DEFENDANTS ALLEGE PLAINTIFF'S COMPLAINT FAILED TO ALLEGE WELLS FARGO WAS NOTIFIED OF THE DISPUTE BY A CREDIT REPORTING AGENCY

30. Defendant Experian's Credit report dated July 06, 2011, credit report states: "Experian collects and organizes information about you and your credit history from your creditors and other reliable sources" see Exhibit A1.

31. Defendant Experian's April 11, 2013, credit report on Plaintiff states: "revision made to my credit file as a result of Experian's processing of my dispute". see Exhibit A2

32. Defendant Experian's July 31, 2013, credit report on Plaintiff states: "Experian collects and store information from credit grantors and following the guidelines in the FCRA". see Exhibit A3.

33. Defendant Experian's November 19, 2013, credit report on Plaintiff states: "Experian have already investigated this information and the credit granter has verified its accuracy". see Exhibit A4.

34. Defendant Experian's December 16, 2013, credit report on Plaintiff states: "Experian collects and store information from credit grantors and following the guidelines in the FCRA". see Exhibit A5.

35. Further, Plaintiff hired Law Firm Henley and Henley, P. C., to dispute the credit report. see Exhibit A6

36. On or about March 2013 to July 10, 2013, Defendant Wells Fargo was contacted by Chris Ebert, Esq. of the Henley and Henley Law firm for correcting the reporting error; Wells Fargo was on notice. see Exhibit A7

37. Reasonable persons should be able to believe that when a credit reporting agency states it "collects and organizes information about you and your credit history from your creditors and other reliable sources", and that "revision made to my credit file as a result of Experian's processing of my dispute" "Experian have already investigated this information and the credit granter has verified its accuracy" and it "collect and store information from credit grantors and following the guidelines in the FCRA" is a result of an investigation and the result was provided by the credit granter.

38. Plaintiff's credit report was initially changed as a result of his dispute but that the inaccurate information was re-reported during the limitations period; that new, incorrect information was reported during the limitations period;

39. "Under § 1681s–2(b), a furnisher . . . is only required to investigate information it has provided if a consumer reporting agency notifies it that a consumer has contacted the agency and disputed the furnished information." Id. (citations omitted). "Thus, this claim comes under § 1681s–2(b).

40. Plaintiff disputed with credit agency in June 2011, December 2012, December 2013, and January 2014.

41. Further, Plaintiff's agent contacted Defendant Experian as well as Defendant Wells Fargo itself about correcting the reporting error in March 2013.

42. This is clearly an indication that both Defendants were aware of the information.

43. Defendant Wells Fargo failed to reasonably investigate and modify and correct the disputed information.

44. In here the furnisher then failed to [reasonably] investigate and modify the inaccurate information.

45. A District Court of Maryland opinion distills these provisions. See **Ausar-El vs. Barclay Bank Delaware et al.**, Civil No. 2012-cv-00082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012) (citation omitted). In **Ausar-El**, Honorable Judge Messitte observes that "[s]ection 1681 s–2(b) outlines the duties a furnisher of information has when given notice of a dispute concerning inaccurately reported information." Id. (citation omitted). "Furnishers of information typically are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." Id. (citation and internal quotation marks omitted). "Under § 1681s–2(b), a furnisher . . . is only required to investigate information it has provided if a consumer reporting agency notifies it that a consumer has contacted the agency and disputed the furnished information." Id. (citations omitted).

46. See id. **Johnson v. MBNA Am. Bank, NA**, Civil No.2005-cv-00150  357 F.3d 426, 431 (4th Cir. 2004) (emphasis added) ("[Section] 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified."

## PLAINTIFF'S DEFEMATION CLAIM

47. Defendants' Counsels argue the Plaintiff's defamation claim should be dismissed as being preempted by the FDCA

48. Any level of research on this subject would have revealed that this Court applies 15 U.S.C. §1681h to defamation claims alleging malice.

49. Despite knowing that Courts applies §1681h to defamation claims alleging malice, Defendants' Counsels cite §1681t as the basis for their claim that the FCRA preempts Plaintiff's defamation claim.

50. Defendants' Counsels cite court opinions in support of their contention and totally ignore the opinions of this Court interpreting 1681h as applicable to malice defamation claims.

51. See e.g. **Beachley v. PNC Bank**, 2011 WL 3705239 * 4 (D. Md.);

52. **Robinson v. Greystone Alliance, LLC**, , **2011 WL 2601573 * 8 (D. Md.)**, **Beuster v. Equifax Information Services**, 435 F.Supp.2d 471, 479 (2006); and **Spencer v. Henderson-Webb, Inc.**, 81 F. Supp. 2d 582, 598 (D. Md. 1999).

53. Such action can only be construed as acting in bad faith.

54. Plaintiff has been continuously working to correct the erroneous errors, taking too much time from work, personal and family life to correct the credit report errors.

55. Having credit errors caused personal, mental, emotional, physical, financial distress and rejection in the society and social welfare impact in day-to-day life.

56. On December 29, 2011, Plaintiff applied for credit from CBNA and the application was denied as a result of the Defendant's causing the credit report error.

57. On October 16, 2011, Plaintiff applied for credit from Bank of America and the application was denied as a result of the Defendants' causing the credit report error.

58. October 4, 2011, Plaintiff applied for business credit from Wells Fargo Bank TX NA and the application was denied as a result of the Defendants' causing the credit report error.

59. July 6, 2012, Plaintiff applied for an auto loan with Credco and the application was denied as a result of the Defendants' causing the credit report error.

60. July 7, 2012, Plaintiff applied for a car loan from American Honda Finance Corp and the application was denied as a result of the Defendants' causing the credit report error.

61. May 4, 2013, Plaintiff applied for an auto loan from Chase Bank USA NA and the application was denied as a result of the Defendants' causing the credit report error.

62. July 6, 2012, Plaintiff applied for an auto loan from Credco Automotive and the application was denied as a result of the Defendants' causing the credit report error.

63. July 7, 2012, Plaintiff applied for an auto loan from Santander Auto and the application was denied as a result of the Defendants' causing the credit report error.

64. August 17, 2012, Plaintiff applied for a refinance loan from Hiway Credit Union and the application was denied as a result of the Defendants' causing the credit report error.

65. July 7, 2012, Plaintiff applied for an auto loan to from Wells Fargo Dealer Service and the application was denied as a result of the Defendants' causing the credit report error.

66. July 7, 2012, Plaintiff applied for an auto loan from Capital One Auto Finance and the application was denied as a result of the Defendants' causing the credit report error.

67. November 8. 2012, Plaintiff applied for a business equipment loan from Herrera Property Group and the application was denied as a result of the Defendants' causing the credit report error.

68. May 7, 2013, Plaintiff applied for a credit card from CBNA Credit and the application was denied as a result of the Defendants' causing the credit report error.

69. May 4, 2013, Plaintiff applied for credit from Chase Bank and the application was denied as a result oaf the Defendants' causing the credit report error.

## DEFENDANT WELLS FARGO AS A "FURNISHER" UNDER THE FCRA

70. Defendant Wells Fargo as an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. § 1681s-2.

## DEFENDANT EXPERIAN AS A "CONSUMER REPORTING AGENCY" UNDER THE FCRA

71. Defendant Experian is a "consumer reporting agency," as codified at 15 U.S.C. § 1681a(e). Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

72. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. 15 U.S.C. § 1692(a). 15 U.S.C. § 6801(a) (emphasis added).

73. Defendants and/or their agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and/or falsely report credit report and thereby invaded Plaintiff's privacy. 15 U.S.C. § 6801(a).

74. Defendants and their agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of credit reporting, thereby invading and intruding upon Plaintiff's right to privacy. See Section 1681t(b)(1)(F).

75. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

76. The conduct of the Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

77. The false credit reporting by Defendant Wells Fargo and Defendant Experian naturally resulted in invasions of privacy of Plaintiff.

78. As a result of all intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

79. All acts of Defendants and their agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendants are subject to punitive damages.

80. Defendants negligently, wantonly, and/or intentionally hired, trained, retained, or supervised incompetent credit reporting individuals and/or entities, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendants are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff. See **John Stevenson v. TRW**, United States Court of Appeals, Fifth Circuit, Case No. 91-7142, April 1, 1993.

81. Defendants provided false information with malice or willful intent to injure. See 15 U.S. Code § 1681h(e).

82. See **Charlotte Mattice v. Equifax d/b/a Equifax Credit Information Services, CSC Credit Services, Inc., and MBNA America, N. A.**, Case No. 03-CV-1060, 2003, District of Minnesota.

83. Plaintiff seeks injunctive relief from all Defendants.

84. Plaintiff is entitled to injunctive relief for violation of state law claim for invasion of privacy.

85. See **Dominguez v. Davidson**, 266 Kan. 926, 937, 974 P.2d 112 (1999) (elements of invasion of privacy through false light include publication to third party of information which falsely represents person and representation is highly offensive to reasonable person).

86. Plaintiff seeks an injunction that essentially subjects the credit reporting agency Defendant to strict liability for inaccuracies that appear on plaintiff's future credit reports.

87. Such an injunction remedies conflicts with the standards and duties of credit reporting agencies set forth in the FCRA.

88.     Those standards require reasonable procedures to ensure the accuracy of credit reports. See 15 U.S.C. § 1681e(b) (consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy of information); **Bittick v. Experian Information Solutions, Inc.**, 419 F.Supp.2d 917, 2006 WL 593836, at *2 (N.D.Tex.2006) (FCRA preempts injunctive relief under common law against credit reporting agency); **Poulson v. Trans Union LLC**, 370 F.Supp.2d 592, 593 (E.D.Tex.2005) (FCRA preempts injunctive relief under state law against credit reporting agency); **Lin v. Universal Card Servs. Corp.**, 238 F.Supp.2d 1147, 1152 (N.D.Cal.2002) (FCRA preempts state statute which authorizes injunctive relief). *1355* But cf. **Albert v. Trans Union Corp.**, 346 F.3d 734, 739-40 (7th Cir.2003) (in dicta, noting that even though district court denied injunctive relief under FCRA, essentially same injunctive relief available under state law); **White v. First Am. Registry, Inc.**, 378 F.Supp.2d 419, 424-25 (S.D.N.Y. 2005) (overruling motion to dismiss claim against consumer reporting agency for injunctive relief under New York statute).[6]

## CONCLUSION

89.     For the forgoing reasons as well as the detailed opposition to Defendants motion to dismiss, Plaintiff respectfully request this court to strike the Defendants motion to dismiss in its entirety.

90.     Pursuant to Fed. R. Civ. P. 12(b)(6), this Court should enter an Order denying dismissal in favor of the Plaintiff, Kurian Benjamin, and against Defendant Experian Information Solutions, Inc., and Defendant Wells Fargo Home Mortgage, a division of Wells Fargo N. A.

91.     If the Court were inclined to grant Defendant's dismissal, Plaintiff asks leave to amend the Complaint.

Date:  May 14, 2014

Kurian Benjamin
Plaintiff and Attorney *pro se*
10092 Powers Lake Trail
Woodbury, MN 55129
(651) 755-8500